**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

WILLIAM G. CLOWDIS, JR., M.D.,

     Plaintiff,

v.                            Civil Action No. 3:15CV128

JOEL JEREMY SILVERMAN, M.D., <u>et al.</u>,

     Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Commonwealth Defendants' MOTION TO DISMISS (Docket Nos. 24, 55), the VCU Defendants' MOTION TO DISMISS (Docket No. 29), and the National Practitioner Database's MOTION TO DISMISS (Docket No. 49). For the reasons stated below, the Commonwealth Defendants' MOTION TO DISMISS (Docket Nos. 24, 55), the VCU Defendants' MOTION TO DISMISS (Docket No. 29), and the National Practitioner Database's MOTION TO DISMISS (Docket No. 49) will be granted in their entirety.

**BACKGROUND**

Plaintiff William G. Clowdis, Jr., M.D. ("Clowdis") states that he is a former physician who earned a license to practice medicine and surgery in obstetrics and gynecology in the Commonwealth in 1991. (2d Am. Compl., Docket No. 15, ¶¶ 5, 22,

26). Due to a prolonged illness between 2001 and 2004, Clowdis voluntarily inactivated his license beginning in 2001. (2d Am. Compl. ¶¶ 22, 26). Clowdis's illness was exacerbated by the use of doctor-prescribed medications that induced adverse physical and mental symptoms. (2d Am. Compl. ¶¶ 23, 24). During his illness and while under the influence of these prescription medications, Clowdis was involved in an incident at his residence that resulted in a felony charge in Colorado state court. (2d Am. Compl. ¶¶ 24, 25, 28.). The Colorado state court placed Clowdis in a diversion program, whereby his felony conviction would be erased contingent upon successful completion of a period of court supervision. (2d Am. Compl. ¶¶ 25, 28 n.2). Clowdis was taken off his prescription medications in 2004, and his treating physician cleared him to return to the practice of medicine in 2005. (2d Am. Compl. ¶ 26). Clowdis completed his Colorado state court diversion program, which resulted in his felony charge being dismissed with prejudice. (2d Am. Compl. ¶ 28). While being weaned off his prescriptions, Clowdis voluntarily enrolled in a physician health monitoring program in Colorado known as Colorado Physician Health Program ("CPHP"). (2d Am. Compl. ¶ 27).

In December 2006, after completing the Colorado diversion program, Clowdis received an offer to work as an OB/GYN at a West Virginia hospital. (2d Am. Compl. ¶ 29). CHCP could not

monitor Clowdis once he left Colorado, and requested that Clowdis notify the appropriate monitoring program in Virginia, the state in which he was licensed. (2d Am. Compl. ¶ 30). Clowdis disclosed his participation in CPHP to Virginia's Health Practitioner Monitoring Program ("HPMP") under a confidentiality agreement. (2d Am. Compl. ¶ 30). HPMP determined that Clowdis could not participate in HPMP because he resided in West Virginia. (2d Am. Compl. ¶ 31). In breach of the confidentiality agreement, HPMP informed the Virginia Board of Medicine ("the Board") about Clowdis's felony conviction. (2d Am. Compl. ¶ 30). The Board revoked Clowdis's medical license without a hearing on the basis that Clowdis was a convicted felon. (2d Am. Compl. ¶ 31). The Board also placed a record in the National Practitioner Databank ("NPDB") stating that Clowdis was a convicted felon. (2d Am. Compl. ¶ 39).

Between 2005 and 2010, Clowdis received forensic psychiatric, independent medical, and competency evaluations, all of which found him fit to return to practice. (2d Am. Compl. ¶ 41). One such review came from Joel Silverman, M.D. ("Silverman"). (2d Am. Compl. ¶ 41).

At an unspecified subsequent point between 2007 and 2011, Clowdis applied for reinstatement of his medical license. (2d Am. Compl. ¶ 37). Initially, the Board informed Clowdis that it would not reinstate his license because of Clowdis's history of

3

mental health problems and his past receipt of disability benefits. (2d Am. Compl. ¶ 37).

At an unspecified subsequent point between 2007 and 2011, Clowdis applied for reinstatement of his medical license. (2d Am. Compl. ¶ 42). In 2011, the Board gave Clowdis a hearing on reinstatement. (2d Am. Compl. ¶ 40). Silverman's report played a substantial role in the decision-making process. (2d Am. Compl. ¶ 49). In its 2011 Order, the Board made formal findings of fact that: (1) Clowdis showed no evidence of current psychopathology or substance abuse and (2) the felony charge against him had been dismissed. Nevertheless, the Board made a finding of law that Clowdis was a convicted felon. On this basis,[1] the Board stayed Dr. Clowdis's suspension, contingent on his participation in HPMP monitoring. (2d Am. Compl. ¶ 45). The HPMP monitoring contract required Clowdis's compliance with all HPMP orders, upon penalty of suspension or revocation of his medical license. (2d Am. Compl. ¶ 46). Although Clowdis asserts that the hearing was flawed by certain enumerated procedural and legal errors, Clowdis did not appeal the ruling within the 30 day deadline. (2d Am. Compl. ¶ 45).

---

[1] Clowdis asserts that the substantive and evidentiary standards used in the proceeding were improper. (2d Am. Compl. ¶¶ 44, 50-51).

4

After the 30 day deadline to appeal, HPMP informed Clowdis that he would not be permitted to work indefinitely and restricted Clowdis from leaving Virginia. (2d Am. Compl. ¶¶ 47-48). At about this time, Clowdis also learned that his evaluator, Silverman, was the CEO of HPMP. (2d Am. Compl. ¶ 49-50). Clowdis suspended participation in HPMP because he could not comply with HPMP's prohibition on employment and because he disagreed with the terms of HPMP's monitoring contract. (2d Am. Compl. ¶¶ 52-54).

As a result of Clowdis's non-participation, the Board convened a new hearing, which Clowdis asserts was flawed by certain enumerated procedural and legal errors. (2d Am. Compl. ¶ 55). The Board reinstated Clowdis's suspension. (2d Am. Compl. ¶ 56). Clowdis appealed the Board's decision to the Circuit Court for the City of Richmond (the "Circuit Court"). (2d Am. Compl. ¶ 56). The Board did not send certain records to the Circuit Court, with the result that litigation there has been at a standstill since 2013. (2d Am. Compl. ¶ 56).

Clowdis subsequently filed this action against a host of entities and individuals involved with his suspensions. The first group of defendants includes the Commonwealth of Virginia, the Department of Health Professions ("DHP"), Virginia Commonwealth University ("VCU"), Virginia Board of Medicine ("the Board"), Virginia Health Practitioner Monitoring Program

("HPMP"), Board Executive Director William Harp, Board Deputy Executive Director Jennifer Deschenes, DHP investigator Sherry Foster, HPMP case manager Amy Stewart, and Laura Hopson-Bush. The Court refers collectively to these defendants as the "Commonwealth Defendants." The second group of defendants includes Dr. Joel Silverman ("Silverman"), MCV Associated Physicians, and Virginia Commonwealth University Health System Authority ("VCUHSA"). The Court refers collectively to these defendants as the "VCU Defendants." Finally, Clowdis sued the National Practitioner Data Bank ("NBDB").

The Commonwealth Defendants initially filed a motion to dismiss on behalf of the Commonwealth, DHP, the Board, VCU, HPMP, Harp, Deschenes, Foster, and Stewart. (Docket No. 24). The Commonwealth Defendants filed a functionally identical motion to dismiss on behalf of Hopson-Bush after Clowdis served Hopson-Bush. (Docket No. 55). The VCU Defendants filed a separate motion to dismiss. (Docket No. 29). NPDB filed a separate motion to dismiss. (Docket No. 49).[2]

---

[2] Clowdis did not properly serve either Ryals or Dixson, two retired civil servants. (Commonwealth's Opp. to Pl.'s Mtn. for Default Judgment, Docket No. 69 ("Commonwealth's DJ Opp."); Pl.'s Reply to Def. Ryals and Dixson's Opp. to Pl.'s Mtn. for Default Judgment, Docket No. 74). The Attorney General's office mistakenly entered notice of appearance on Ryals and Dixson's behalf. (Commonwealth's DJ Opp. 3). For reasons stated in an accompanying Order, the Court will deny default judgment against Ryals and Dixson and enter an order dismissing the case as to Ryals and Dixson for lack of service.

## LEGAL STANDARDS

### A. Deference To Clowdis's Pro Se Status

Clowdis claims that, as a pro se litigant, he is entitled to liberal construction of his pleadings. (Pl.'s Resp. in Opp. to [Commonwealth's] Mtn. to Dismiss, Docket No. 37, at 16) ("Pl.'s Commonwealth Opp."). Clowdis is correct that pro se litigants are typically entitled to have their pleadings given a liberal construction. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). That rule applies to pro se litigants because they do not have the assistance of a lawyer in presenting their claims.

Clowdis alleges that, while waiting for a Board hearing on reinstatement of his medical license between 2007 and 2011, he completed law school. (2d Am. Compl. ¶ 35). Clowdis passed the New York State bar exam in 2011, "but his bar admission was placed on hold [as] a result of his suspended medical license." (2d Am. Compl. ¶ 36).

Recently, this Court held that, when a plaintiff asserts in his Complaint that he is a lawyer, "his pleadings are not entitled to the lenient treatment accorded to litigants who are proceeding without the aid of a lawyer." Rashad v. Jenkins, No. 3:15CV655, 2016 WL 901279, at *2-3 (E.D. Va. Mar. 3, 2016) (surveying federal circuit court and Eastern District of

7

Virginia opinions). Most cases considering deference to pro se attorneys involve attorneys who are licensed and practicing in the state in which the federal court sits or are licensed in a neighboring state.[3]

The Court concludes that it is not the practice or license that is dispositive in the deference typically given to pro se plaintiffs. Rather, it is the lack of familiarity with substantive and procedural law that undergirds the relative leniency shown to pro se plaintiffs. E.g. Harbulak v. Suffolk Cty., 654 F.2d 194, 198 (2d Cir. 1981) (finding that pro se attorney was not entitled to special consideration because

---

[3] E.g., Andrews v. Columbia Gas Transmission Corp., 544 F.3d 618, 633 (6th Cir. 2008) (finding the district court did not abuse its discretion by denying special consideration to pro se practicing attorneys); Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001) ("While we are generally obliged to construe pro se pleadings liberally... we decline to do so here because [plaintiff] is a licensed attorney") (citation omitted); Godlove v. Bamberger, Foreman, Oswald, and Hahn, 903 F.2d 1145, 1148 (7th Cir. 1990) (finding no abuse of discretion where pro se plaintiff was a member of the state's bar); Harbulak v. Suffolk Cty., 654 F.2d 194, 198 (2d Cir. 1981) (finding that pro se attorney was not entitled to special consideration because plaintiff was a "practicing lawyer who had the means and the knowledge, or at least the ability to obtain the knowledge, to recognize" whether his claims were reasonable); Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("[Plaintiff] proceeds pro se in his appeal. We cannot accord him the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney.") (citation omitted); Gordon v. Gutierrez, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded pro se litigants.").

8

plaintiff was a "practicing lawyer who had the means and the
knowledge, or at least the ability to obtain the knowledge, to
recognize" whether his claims were reasonable). Because Clowdis
represents that he is a law school graduate, that he passed a
state bar examination, and that he would have been licensed in
that state but for the Board's suspension of his license, the
Court concludes that Clowdis is not entitled to the relative
leniency typically shown to pro se plaintiffs.[4]

## B. The Commonwealth Defendants' Fed. R. Civ. P. 12 Motions

Because Defendants have filed both Motions to Dismiss for
lack of subject matter jurisdiction under Fed. R. Civ. P.
12(b)(1) and Motions to Dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), the challenge to subject matter
jurisdiction asserted in the motion under Rule 12(b)(1) should
typically be addressed first. Sucampo Pharms., Inc. v. Astellas
Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006) (citing Ruhrgas
AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)).

---

[4] However, as discussed below, Clowdis's claims are so clearly
barred by Younger abstention (in the case of the Commonwealth
Defendants and VCU Defendants) or the case-and-controversy bar
(in the case of NPDB) that liberal construction of Clowdis's
claims would not save his case. This is not a situation where a
plaintiff failed to state an element of a cause of action in
perfect legalese; rather, the existence of the state court
proceeding stands as an immutable bar to relief in this Court,
no matter how it is described.

The evidentiary standard for motions under Rule 12(b)(1) depends on whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction. See Walker v. United States Dept. of the Army, 60 F. Supp. 2d 553, 555 (E.D. Va. 1999) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)); see also 2 **Moore's Federal Practice** § 12.30[4]; Crutchfield v. U.S. Army Corps. of Engineers, 230 F. Supp. 2d 687, 695 (E.D. Va. 2002). In the case of a facial attack, the court must accept the plaintiff's allegations as true. However, in the case of an attack on the facts supporting jurisdiction, the court is "free to weigh the evidence to determine the existence of jurisdiction" because its "very power to hear the case" is at issue. Walker, 60 F. Supp. 2d at 555; see also Velasco v. Gov't of Indon, 370 F.3d 392, 398 (4th Cir. 2004) ("When a defendant challenges subject matter jurisdiction by way of a motion to dismiss filed under Rule 12(b)(1), the district court may regard the pleadings as evidence on the issue and also may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."). Moreover, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Walker, 60 F. Supp. 2d at 555

(quoting Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Because the Commonwealth Defendants and VCU Defendants contest the factual basis of jurisdiction through a Rule 12(b)(1) motion to dismiss, an independent evaluation of the merits of the jurisdictional claim is appropriate.

In such an evaluation, "[t]he plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." Biktasheva v. Red Square Sports, Inc., 366 F.Supp.2d 289, 294 (D. Md. 2005); see also Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cty., 523 F.3d 453, 459 (4th Cir.2008). Nevertheless, "[t]he court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. at 294 (citation omitted).

## C. NPDB's Case or Controversy Motion

The United States Constitution's "case-or-controversy" requirement limits the jurisdiction of the federal court system. **U.S. Const.** Art III § 2. An issue is unripe, and not fit for review, if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). A motion to dismiss for lack of subject matter jurisdiction under the doctrine of

ripeness is assessed pursuant to the principles of Fed. R. Civ. P. 12(b)(1). E.g., Arc of VA, Inc. v. Kaine, No. CIV 3:09CV686, 2009 WL 4884533, at *3 (E.D. Va. Dec. 17, 2009).

## ANALYSIS

### A. Younger Abstention Bars Clowdis's Claims Against The Commonwealth Defendants And The VCU Defendants

The Commonwealth Defendants and VCU Defendants seek dismissal on a variety of jurisdictional and substantive grounds. (Commonwealth Defendants' Mem. in Supp. of Mtn. to Dismiss, Docket No. 25 ("Commonwealth's Commonwealth Mem."); VCU Defendants Mem. in Supp. of Mtn. to Dismiss (Docket No. 30) ("VCU's VCU Mem.")). Both parties seek application of Younger abstention. (Commonwealth's Commonwealth Mem. 6-8; VCU's VCU Mem. 13-15). For the reasons stated below, the Court finds the Commonwealth and VCU Defendants' Younger arguments compelling, and cannot exercise jurisdiction over this case. Absent jurisdiction, the Court declines to reach the other procedural and substantive issues raised in the Commonwealth Defendants and VCU Defendants' briefs.

### 1. Basic Requirements for Younger Abstention

The doctrine of Younger abstention, Younger v. Harris, 401 U.S. 37 (1971), requires that a federal court decline

jurisdiction and abstain from interfering in state proceedings where there exists:

> (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that
> (2) implicates important, substantial, or vital state interests; and
> (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008) (relying on Moore v. City of Asheville, 396 F.3d 385, 390 (4th Cir. 2005). Although Younger abstention originated in federal litigation initiated subsequent to an underlying state criminal case, the Supreme Court "later carried Younger into the civil arena, and even to administrative proceedings." South Carolina Ass'n of School Adm'rs v. Disabato, 460 F. App'x. 239, 242 (4th Cir. 2012) (relying on Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1986) (extending Younger to civil proceedings); Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 19 (1986) (extending Younger to administrative proceedings)); see also Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982) (upholding district court's application of Younger abstention to pending state bar disciplinary proceeding).[5] "The Supreme Court noted that Younger

---

[5] The Supreme Court recently emphasized that Younger abstention applies to only three categories: state criminal prosecutions,

was based on concerns for comity and federalism – concerns 'equally applicable' to 'civil proceedings in which important state interests are involved[,]' so long as those proceedings provide the federal plaintiff with 'a full and fair opportunity to litigate [its] constitutional claim." Disabato, 460 F. App'x at 242 (quoting Ohio Civil Rights Comm'n, 477 U.S. at 627); see also Phillips v. Virginia Bd. of Medicine, 749 F. Supp. 715, 719-721 (E.D. Va. 1990).[6] "Younger abstention represents an

---

"certain civil enforcement proceedings," and civil proceedings "uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Comm., Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013). In defining those "certain civil enforcement proceedings," the Court explicitly included "enforcement actions characteristically initiated to sanction the federal plaintiff, i.e. the party challenging the state action, for some wrongful act," as in Middlesex. Id. at 592. As Phillips establishes, Middlesex is the Supreme Court decision most analogous to appeals from decisions of the Virginia Board of Medicine, Phillips, 749 F. Supp. at 721. So long as Middlesex remains well within the boundaries of "certain civil enforcement proceedings," this case also falls well within the boundaries of "certain civil enforcement proceedings," and thus within Younger.

[6] A plaintiff faces a long uphill climb in establishing that the state proceedings deprive him of a "full and fair opportunity to litigate [his] constitutional claim." Where all decision-making members of an administrative board have a pecuniary interest which disqualifies them from passing on the issues, Younger abstention is inappropriate. E.g., Gibson v. Berryhill, 411 U.S. 564, 578 (1973). Although in this case Clowdis's alleges that Silverman has a pecuniary interest in the outcome of Clowdis's 2011 Board hearing (2d Am. Compl. ¶ 49), this is easily distinguished from Gibson because (1) Clowdis does not allege that any of the Board members who made the decision to place Clowdis under a HPMP contract had a pecuniary interest in the outcome of the hearing, and (2) Clowdis does not allege that the Circuit Court has had a pecuniary interest in the outcome of the

accommodation between a state's pursuit of important interests in its own forum and the federal interest in federal adjudication of federal rights." Telco Comm'ns, Inc. v. Carbaugh, 885 F.2d 1225, 1229 (4th Cir. 1989).

In 1990, Judge Ellis, in a thorough and well-reasoned decision, held that state court appeals from Virginia Board of Medicine licensing decisions were subject to Younger abstention. Phillips, 749 F. Supp. at 715. Applying the rule set out in Phillips, the Court finds that the three essential requirements for Younger abstention are present in this case.

First, Clowdis's pending appeal to the Circuit Court, initiated in 2013 (2d Am. Compl. ¶ 56), clearly constitutes "an ongoing state judicial proceeding, instituted prior to any substantial progress" in this federal proceeding, initiated in 2015.[7]

---

hearing. Therefore, at the Circuit Court appellate proceeding upon which this Court bases its Younger abstention, there is no allegation of the sort of pecuniary interest which would deprive Clowdis of a full and fair opportunity to litigate his federal claims. Moreover, as discussed in detail subsequently, Virginia's Administrative Process Act explicitly permits litigation of constitutional claims on appeal.

[7] In Phillips, the Court deferred where the plaintiff had filed in federal court (1) after the Board proceedings were complete but (2) before taking an appeal to the state circuit court. Phillips, 724 F. Supp. at 724. While the federal court contemplated abstention, plaintiff appealed to the state circuit court, expressly reserving her federal constitutional claims for review in federal court. Id. The federal court nevertheless abstained from hearing any of plaintiff's claims. Id. The

Second, Clowdis's pending appeal to the Circuit Court "implicates important, substantial, or vital state interests." As thoroughly explained in _Phillips_, the Virginia medical license revocation procedures implicate such interests.

> It is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of the healing arts. So it is that Virginia courts have long upheld the constitutionality of the state's regulation of medicine. See _Grosso v. Commonwealth_, 180 Va. 70, 21 S.E.2d 728 (1942); _Pickard v. Commonwealth_, 126 Va. 729, 100 S.E. 821 (1920). The Virginia Supreme Court has specifically upheld the state's ability to license physicians and regulate their practice as a valid exercise of the state's police power. _Grosso_, 21 S.E.2d at 730; _Goe v. Gifford_, 168 Va. 497, 191 S.E. 783 (1937); _State Dentists v. Gifford_, 168 Va. 508, 191 S.E. 787 (1937). Furthermore, states have traditionally been accorded leeway in adopting procedures to protect public health and safety. _Mackey v. Montrym_, 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979). In _Middlesex_, the Supreme Court recognized that states have an important interest in exercising control over the professional conduct of attorneys. For somewhat different, but equally powerful reasons, states have a

---

present case is much simpler: Clowdis appealed to the state circuit court before filing in this Court.

    _Phillips_ also implicitly establishes – if there were any room or need for debate on this matter – that an appeal from the Board's decision to a state circuit court is a "judicial proceeding." _Id._

    Clowdis briefly notes that "there is no pending investigation against Plaintiff by the medical board." (Pl.'s Opp. 17). That is irrelevant, because there _is_ a pending state circuit court appeal, and _Phillips_ establishes that such state circuit court appeals are subject to _Younger_ abstention.

16

> vital interest in regulating the conduct of
> the medical professionals they license.

Phillips, 749 F. Supp. at 722-23; see also Simopoulos v. Virginia Bd. of Medicine, 644 F.2d 321 (4th Cir. 1981).[8]

Third, the Circuit Court proceeding "provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit."

> Younger abstention is not required where an
> ongoing state proceeding does not provide an
> opportunity for resolution of a party's
> federal constitutional claims. Compare
> Middlesex, 457 U.S. at 432, 435-36, 102
> S.Ct. at 2521, 2523 (finding "adequate
> opportunity" to raise constitutional
> claims), and Ohio Civil Rights Comm'n v.
> Dayton Christian Schools, 477 U.S. at 627-
> 28, 106 S.Ct. at 2722-23 (same), with
> Steffel v. Thompson, 415 U.S. 452, 462, 94

---

[8] Every federal appellate court to have addressed the question has joined Phillips in finding decisively that competency and licensing of doctors is a significant state interest for Younger/Middlesex purposes. Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 664-65 (1st Cir. 2010); Doe v. State of Conn., Dep't of Health Servs., 75 F.3d 81, 85 (2d Cir. 1996), as amended on denial of reh'g (Jan. 30, 1996); Zahl v. Harper, 282 F.3d 204, 209 (3d Cir. 2002); Allen v. Louisiana State Bd. of Dentistry, 835 F.2d 100, 103 (5th Cir. 1988); Watts v. Burkhart, 854 F.2d 839, 846-47 (6th Cir. 1988); Majors v. Engelbrecht, 149 F.3d 709, 713 (7th Cir. 1998); Baffert v. California Horse Racing Bd., 332 F.3d 613, 618 (9th Cir. 2003).
Additionally, Simopoulos implicitly recognizes the state's interest in regulating the practice of medicine. Because the case was decided pre-Middlesex and it does not use the "state interest" language using the same terminology as post-Middlesex decisions by other appellate courts. However, the Fourth Circuit's decision to abstain in the face of existing medical license appeals even before Middlesex clearly indicates that the Fourth Circuit respects the state's legitimate interest in such proceedings.

S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) (finding no ongoing state proceeding to serve as vehicle for vindicating federal plaintiff's constitutional rights), <u>and Gerstein v. Pugh</u>, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975) (finding that the issue of the legality of a pretrial detention could not be raised in defense of a state criminal prosecution). Here, this opportunity exists.

Va.Code §§ 9-6.14:15 to 9-6.14:19 provide for judicial review in state courts of agency determinations. Section 9-6.14:16 provides that "[a]ny person ... aggrieved by and claiming unlawfulness of <u>a case decision</u> ... shall have a right to direct review thereof by an appropriate and timely court action against the agency ... and the judgment of such courts of original jurisdiction shall be subject to appeal to or review by higher courts as in other cases unless otherwise provided by law." (Emphasis added.) Section 9-6.14:17 provides that a state court reviewing an agency action may consider issues of law, including "(i) accordance with <u>constitutional right, power, privilege, or immunity</u>...." (Emphasis added.) The Fourth Circuit has observed that § 9-6.14:17 contains "language patently broad enough to include [a] plaintiff's objection to [a] statute on constitutional grounds." <u>Simopoulos v. Virginia State Bd. of Medicine</u>, 644 F.2d at 330 n. 37. Consistent with this, the Supreme Court of Virginia, in <u>State Bd. of Health of Virginia v. Godfrey</u>, 223 Va. 423, 290 S.E.2d 875, 881 n. 6, noted that "the scope of review under the Virginia APA is 'virtually identical' to that in the Federal Administrative Procedure Act," <u>citing</u> Annual Survey of Virginia Law, 61 **Va. L. Rev**. 1632, 1639 (1975). Significantly, the plaintiff here has not claimed that she would be unable to raise her constitutional claim in an appeal to the Virginia courts, and defendants correctly point to Va.Code § 9-6.14:17 as proof that

> the claim can be considered on appeal by a
> Virginia court. As plaintiff's
> constitutional claim is reviewable in the
> state court on appeal, the requirement that
> there be "adequate opportunity" for a
> federal plaintiff to raise her claim in
> pending state proceedings is satisfied.

Phillips, 749 F. Supp. at 723-24. The current version of

Virginia's Administrative Procedures Act, **Va. Code** § 2.2-4000 et

seq., provides equivalent protections.

> Any … party aggrieved by and claiming
> unlawfulness of a case decision … shall have
> a right to the direct review thereof by an
> appropriate and timely court action against
> the agency or its officers or agents in the
> manner provided by the Rules of Supreme
> Court of Virginia. Actions may be instituted
> in any court of competent jurisdiction as
> provided in § 2.2-4003, and the judgments of
> the courts of original jurisdiction shall be
> subject to appeal to or review by higher
> courts as in other cases unless otherwise
> provided by law.

**Va. Code** § 2.2-4026(A); see also **Va. Code** § 2.2-4003 (stating

proper venue for such actions).

> The burden shall be upon the party
> complaining of agency action to designate
> and demonstrate an error of law subject to
> review by the court. Such issues of law
> include: (i) accordance with constitutional
> right, power, privilege, or immunity, (ii)
> compliance with statutory authority,
> jurisdiction limitations, or right as
> provided in the basic laws as to subject
> matter, the stated objectives for which
> regulations may be made, and the factual
> showing respecting violations or entitlement
> in connection with case decisions, (iii)
> observance of required procedure where any
> failure therein is not mere harmless error,

19

      and   (iv)   the   substantiality   of   the
evidentiary support for findings of fact.

**Va. Code** § 2.2-4027.

    The three elements for Younger abstention are present,[9] and
require   that   the   Court   abstain   from   the   exercise   of
jurisdiction.


### 2. "Bad Faith" Is Inapplicable In This Case

    To escape abstention, Clowdis argues that his case falls
into the "bad faith" exception to Younger. (Pl.'s Commonwealth
Opp. 16-18) (relying on Sprint Comm., Inc. v. Jacobs, 134 S. Ct.
584, 591 (2013) (quoting Younger, 401 U.S. at 53-54)). For this,
Clowdis   states   two   related   theories:   (1)   that   the   Board's
findings constituted mistakes of fact and law such that all of
its orders "are void ab initio" and all actions taken by the
Board after the 2007 hearing are suspect, and (2) that the Board
is obstructing progress in the Circuit Court proceeding.

    "[B]ad faith in [the Younger] context 'generally means that
a prosecution has been brought without a reasonable expectation
of obtaining a valid conviction.'" Suggs v. Brannon, 804 F.2d
274, 278 (4th Cir. 1986) (quoting Kugler v. Helfant, 421 U.S.

---

[9]   In  fact,  Clowdis  does  not  contest  that  the  three  basic
elements are met. (Pl.'s Resp. in Opp. to Commonwealth's Mtn. to
Dismiss, Docket No. 37, 16-18). Instead, as discussed below, he
contests Younger application entirely on the existence of "bad
faith."

117, 125-26 & 126 n.6 (1975) (finding plaintiff's allegations that members of the New Jersey Supreme Court and deputy attorney general were involved in coercing his grand jury testimony, so that it was impossible for him to receive a fair hearing in the state court system, insufficient to establish bad faith exception to Younger rule)); see also Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002) (noting that the civil corollary to "without reasonable expectation of obtaining a valid conviction" is "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome"). In this case, all the pre-appeal Board proceedings ended "favorably" to the state (e.g., they resulted in suspension). Thus, the most common variant of Younger "bad faith" is not applicable to Clowdis's case.

Nor do the Board's alleged mistakes of law or fact – or even of internal procedures or due process – create an issue of "bad faith." Younger abstention has a remarkably high threshold for tolerating alleged flaws in state court proceedings. Kugler, 421 U.S. 117, 125-26 & 126 n.6 (1975) (finding plaintiff's allegations that members of the New Jersey Supreme Court and deputy attorney general were involved in coercing his grand jury testimony, such that it was impossible for him to receive a fair hearing in the state court system, insufficient to establish bad faith exception to Younger rule); Kim-Stan, Inc. v. Dep't of

Waste Mgmt., 732 F. Supp. 646, 652 (E.D. Va. 1990) (finding that government officials may have acted because of public outcry and out-of-state animus rather than for concrete policy reasons insufficient to establish bad faith). This high threshold has its origins in Younger's recognition that:

> state courts will normally protect federal rights, removing any threat of 'irreparable injury' that might justify federal injunctive relief. Unless the state court cannot be relied upon for full and fair adjudication of constitutional claims (an independent exception to the Younger doctrine), prosecutorial bad faith presents no threat of irreparable injury.

Simopoulos, 644 F.2d at 328 n.27 (quoting Note, Limiting the Younger Doctrine: A Critique and Proposal, 67 Cal. L. Rev. 1318, 1328-29 (1979)). Applying this presumption and reasoning to Clowdis's case: even if defendants' actions involved mistaken findings of fact, mistaken findings of law, lack of evidence, violations of federal law, violation of Constitutional rights, conduct actionable at tort, or any other wrong (2d Am. Compl. ¶¶ 57-59, 61-147), Younger establishes a presumption that state courts are competent to grant the relief requested. Therefore, federal courts should not second-guess a state court's competence in cases which implicate important state interests by snatching the case from state to federal court.[10] The defendants'

---

[10] Clowdis's appeal to bad faith is even less convincing than in Kugler. The plaintiff in Kugler asserted that the entire state

22

actions on which Clowdis relies to establish bad faith are the type of actions judges routinely hear when sitting as appellate courts, and _Younger_ requires that this Court start with a presumption that such courts will be competent in their administration of both state and federal law.[11]

This leads into Clowdis's second basis for application of the "bad faith" exception: the three-year period of inactivity in the case before the Circuit Court. Clowdis notes that he appealed to the Circuit Court, but that "to date, the Board has willfully chosen to refuse to send the records [of the Board procedures] to the Court, even though required to do so by law." (2d Am. Compl. ¶ 56). Clowdis states that shortly after he filed the appeal, the Board filed a motion to transfer venue (to which Clowdis filed an objection), but that the Circuit Court declined

judiciary was tainted against him. In this case, Clowdis has pled that Silverman had a pecuniary interest in the outcome of the Board proceedings and that the Board acted wrongfully, but he has pled no wrongdoing on behalf of the Circuit Court. Because Clowdis has not pled that it is impossible for him to have a fair hearing on his assorted and assignations of error in the state court system, there is no need for this Court to take his case from the state court.

[11] In support of this notion, the Commonwealth Defendants establish that: (1) under the Virginia Administrative Process Act, the Circuit Court can hear both Clowdis's constitutional claims and his request to overturn the Board's order; and that (2) Virginia state courts do in fact overturn Board decisions for lack of substantial evidence or procedural errors. (Commonwealth's Reply, Docket No. 43, 2-3) (relying on **Va. Code.** § 2.2-4000 et seq.; Goad v. Virginia Bd. of Medicine, 580 S.E.2d 494, 40 Va. App. 621 (Va. Ct. Ct. App. 2003); Fetta v. Virginia Bd. of Medicine, 20 Va. Cir. 334 (Va. Cir. Ct. 1990)).

to move forward with the venue motion or any other motion until the Board transmitted the evidentiary record of the underlying hearing. (2d Am Compl. ¶¶ 59, 85).[12]

---

[12] The Board states, via affidavit of its counsel, that the three year delay occurred because the Circuit Court clerk's office only stated the "no movement without an evidentiary record" position to Clowdis, and that neither Clowdis nor the Circuit Court clerk's office informed the Board that the evidentiary record was required for progress on the venue motion. (Commonwealth's Commonwealth Reply, Docket No. 43, at 4 & 4 n.5). The Board states that, if it had been aware of the Circuit Court's position, it would have provided the record. Id. at 4 n.5.

Claudis, in one of many motions to strike, argues that the Board should have known that it had a statutory obligation to transmit the record. (Pl.'s Mtn. to Strike, Docket No. 46, 4). Examining the Administrative Process Act, however, reveals that the statute itself only requires the agency to provide the record when the Circuit Court is making a determination of the propriety of the administrative action. **Va. Code.** § 2.2-4027 ("The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court … The determination of such fact issue shall be made upon the whole evidentiary record provided by the agency"). Although the Circuit Court requested the evidentiary record before addressing the venue question (which this Court presumes was well within the Circuit Court's authority), the statute by its own language only requires that the agency provide the evidentiary record before considering the substantive issue. Given that (1) the Board made only a limited appearance for purposes of venue and (2) the Administrative Process Act itself does not require the record before consideration of the merits, the Court cannot at this point infer bad faith from the Board's failure to comply with a non-statutory requirement of which it was not aware.

This is, of course, extraneous to the Court's decision to dismiss, and is introduced primarily to clarify the record. It is not the Board's bad faith that matters at this stage of a Younger inquiry, but the bad faith of the Circuit Court. What is dispositive is that the record lacks any evidence that Clowdis sought the Circuit Court's assistance in having the records delivered. Clowdis states that he contacted various politicians for assistance moving his Circuit Court case forward. (Pl.'s

Failure to produce necessary documentation is, at its heart, a discovery dispute. This Court recently recognized that its sister federal district courts are "perfectly capable of crafting discovery orders that suit the parties' conduct and [a plaintiff's] needs for discovery." In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C., No. CV 3:16-MC-1, 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016). Under the comity principles of Younger, the Court must grant the same respect to the state courts. The Circuit Court is perfectly capable of crafting discovery orders and remedies for production of the relevant documents, both to resolve the venue motion and going forward with the merits of Clowdis's substantive case. As such, Clowdis's claim that defendants "act[ed] in bad faith to prevent Plaintiff from having any motion even considered by the state court" (Pl.'s Opp. 2) does not constitute the type of bad faith which counsels against applying Younger.

In sum, "permitting plaintiff here to avoid the state court appellate process after trial-like proceedings at the administrative stage would cast a direct aspersion on the

---

Commonwealth Opp. 12-13), but does not assert that either: (1) that he contacted the Board or Board's counsel to explain the Circuit Court's position that the Circuit Court would not move forward without the written record; or (2) that he contacted the Circuit Court to explain the situation and request the Court's assistance in production of the record. In any event, the issue of production is one that must ultimately be addressed to the Circuit Court, especially where, as here, there is no contention that the Circuit Court has in bad faith effected the delay.

capabilities and good faith of Virginia's courts." Phillips, 749 F. Supp. at 727. The comity concerns underlying Younger and Middlesex are all present and mandate application of Younger abstention.

### 3. Conclusion

Because the basic requirements for Younger abstention are met, and because Clowdis has not established the sort of bad faith required for an exception to Younger abstention, the Court abstains from exercising jurisdiction over Clowdis's request for restoration of his license. (2d Am. Compl. ¶ 32). Moreover, the Court declines to exercise jurisdiction over Clowdis's constitutional, federal statutory, state tort, and state contract claims. (Compl. ¶¶ 62-143). The Circuit Court is competent to adjudicate such claims, and finding the defendants at fault (and granting Clowdis relief) in these related matters would interfere with the Circuit Court's ability to adjudicate the propriety of the Board proceedings.

Because the Court abstains from exercising jurisdiction over this case, it will not address the remaining procedural or substantive defenses raised by the Commonwealth Defendants or the VCU Defendants.

## 2. NPDB's Case Or Controversy Motion

NPDB initially filed a motion to dismiss on jurisdictional and substantive grounds. (NPDB's Mem. in Supp. of Mtn. to Dismiss, Docket No. 50). In response, Clowdis conceded that he only included NPDB in this action so that NPDB will be required to promptly adjust his database entry if this Court finds that the Board's submissions to NPDB are false. (Pl.'s Resp. in Opp. to [NPDB's] Mtn. to Dismiss, Docket No. 58, 14). In light of that position, NPDB's Reply turned to case-or-controversy jurisprudence. (NPDB's Reply, Docket No. 60, 3-6). NPDB correctly points out that Clowdis is only entitled to the relief he seeks contingent upon his relief against the Commonwealth and VCU Defendants. Id. Accordingly, Clowdis's entitlement to relief is "contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. at 300. Clowdis's self-acknowledged sole claim against NBPD is not ripe for adjudication. On this basis, the Court will dismiss all claims against NPDB.

### CONCLUSION

For the reasons stated above, the Commonwealth of Virginia's MOTION TO DISMISS (Docket Nos. 24, 55), MCV Associated Physicians' MOTION TO DISMISS (Docket No. 29), and

the National Practitioner Database's MOTION TO DISMISS (Docket No. 49) will be granted in their entirety.


It is so ORDERED.


_____ /s/   REP_____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: May 5, 2016