IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM G. CLOWDIS, JR., M.D.,

    Plaintiff,

v.                          Civil Action No. 3:15-cv-128

JOEL JEREMY SILVERMAN, M.D., et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Commonwealth Defendants' THIRD AMENDED MOTION TO DISMISS (ECF No. 106); RENEWAL AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (ECF No. 108); and SECOND RENEWAL AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (ECF No. 129). For the reasons set forth below, these motions will be GRANTED in their entirety.

## BACKGROUND

This is the latest chapter of a case first filed with the Court in 2015. In October 2015, Plaintiff William G. Clowdis, Jr., M.D. ("Clowdis"), proceeding pro se, filed his SECOND AMENDED COMPLAINT FOR MANDAMUS AND DAMAGES (ECF No. 15) ("SAC") against

various Defendants, including the "Commonwealth Defendants"[1] and the "VCU Defendants"[2] (both sets of Defendants are hereinafter referred to as "Defendants"). The essence of the SAC is that Clowdis objects to the suspension of his medical license by Virginia officials, and alleges various procedural and legal flaws that he thinks are inherent in the suspension. The factual background as alleged by Clowdis was detailed in the Court's 2016 MEMORANDUM OPINION (ECF No. 77), and is set forth again below.

## I. Factual Background Underlying the Second Amended Complaint

Clowdis states that he is a former physician who earned a license to practice medicine and surgery in obstetrics and gynecology in the Commonwealth in 1991. SAC ¶¶ 5, 20, 26 (ECF No. 15). Because of a prolonged illness between 2001 and 2004, Clowdis voluntarily inactivated his Virginia license beginning in 2001. Id. ¶¶ 22, 26. The illness was exacerbated by the use of doctor-

---

[1] The Commonwealth Defendants include: the Commonwealth of Virginia; the Department of Health Professions ("DHP"); the Virginia Board of Medicine ("Board"), which is a part of DHP; Virginia Commonwealth University ("VCU"); the Virginia Health Practitioners' Monitoring Program ("HPMP"); William Harp, M.D., Executive Director of the Board; Jennifer Deschenes, Deputy Executive Director of the Board; investigator Sherry Foster, who works in the Enforcement Division of DHP and assisted in the investigation of Dr. Clowdis' case; investigator Loretta Hopson-Bush; and Amy Stewart, case manager for HPMP. See ECF No. 107 at 1 n.1.

[2] This group consists of: Joel Jeremy Silverman, M.D.; MCV Associated Physicians ("MCVAP"); and Virginia Commonwealth University Health System Authority ("VCUHSA"). See ECF Nos. 109, 130.

2

prescribed medications that induced adverse physical and mental symptoms. Id. ¶¶ 23, 24. During his illness and while under the influence of these prescription medications, Clowdis was involved in an incident at his residence that resulted in a felony charge in Colorado state court. Id. ¶¶ 24, 25, 28. The Colorado state court placed Clowdis in a diversion program, whereby his felony conviction would be erased contingent upon successful completion of a period of court supervision. Id. ¶¶ 25, 28 n.2. Clowdis was taken off his prescription medications in 2004, and his treating physician cleared him to return to the practice of medicine in 2005. Id. ¶ 26. Clowdis completed the Colorado state court diversion program, with the result that the felony charge was dismissed with prejudice. Id. ¶ 28. While being weaned off his prescriptions, Clowdis voluntarily enrolled in a physician health monitoring program in Colorado known as the Colorado Physician Health Program ("CPHP"). Id. ¶ 27.

In December 2006, after completing the Colorado diversion program, Clowdis received an offer to work as an OB/GYN at a West Virginia hospital. Id. ¶ 29. CHCP could not monitor Clowdis once he left Colorado, and requested that Clowdis notify the appropriate monitoring program in Virginia, the state in which he was licensed. Id. ¶ 30. Clowdis disclosed his participation in CPHP to Virginia's Health Practitioner Monitoring Program ("HPMP") under a

3

confidentiality agreement. Id. ¶ 30. HPMP determined that Clowdis could not participate in HPMP because he resided in West Virginia. Id. ¶ 31. Clowdis alleges that, in breach of the confidentiality agreement, HPMP informed the Virginia Board of Medicine ("the Board") about Clowdis' felony conviction. Id. ¶ 30. The Board revoked Clowdis' medical license without a hearing on the basis that Clowdis was a convicted felon. Id. ¶ 31. The Board also placed a record in the "National Practitioner Data Bank" ("NPDB") stating that Clowdis was a convicted felon. Id. ¶ 39. Clowdis alleges that he promptly informed the Board that he was not a convicted felon. Id. ¶ 32.

Between 2005 and 2010, Clowdis received forensic psychiatric, independent medical, and competency evaluations, all of which found him fit to return to practice. Id. ¶ 41. One such review came from Defendant Joel Silverman, M.D. ("Silverman"). Id.

At an unspecified subsequent point between 2007 and 2011, Clowdis applied for reinstatement of his Virginia medical license. Id. ¶ 37. Initially, the Board informed Clowdis that it would not reinstate his license because of Clowdis' history of mental health problems and his past receipt of disability benefits. Id. In 2011, four years after his initial suspension, the Board gave Clowdis a hearing on reinstatement. Id. ¶ 40. Silverman's report played a substantial role in the decision-making process. Id. ¶

4

49.

Following the hearing, in 2011, the Board issued an Order in which it made formal findings of fact that: (1) Clowdis showed no evidence of current psychopathology or substance abuse, and (2) the felony charge against him had been dismissed. Id. ¶ 42. Nevertheless, the Board made a finding of law that Clowdis was a convicted felon. Id. On this basis, the Board stayed Dr. Clowdis' suspension, contingent on his participation in HPMP monitoring. Id. ¶ 45. The HPMP monitoring contract required Clowdis' compliance with all HPMP orders, upon penalty of suspension or revocation of his medical license. Id. ¶ 46. Although Clowdis asserts that the hearing was flawed by certain enumerated procedural and legal errors, Clowdis did not appeal the ruling within the 30-day deadline. Id. ¶ 45.

After the 30-day deadline to appeal, HPMP allegedly informed Clowdis that he would not be permitted to work indefinitely, restricted Clowdis from leaving Virginia, and restricted Clowdis from making phone calls to out-of-state hospitals interested in hiring him. Id. ¶¶ 47-48. At about this time, Clowdis also learned that his evaluator, Silverman, was the CEO of HPMP. Id. ¶ 49-50. Clowdis suspended participation in HPMP because he could not comply with HPMP's prohibition on employment and because he disagreed with the terms of HPMP's monitoring contract. Id. ¶¶ 52-54.

5

As a result of Clowdis' non-participation in HPMP, the Board convened a new hearing in February 2013, which Clowdis asserts was flawed by certain enumerated procedural and legal errors. Id. ¶ 55. The Board reinstated Clowdis' suspension. Id. Clowdis appealed the Board's decision to the Circuit Court for the City of Richmond (the "Circuit Court"). Id. ¶ 56. Clowdis alleges that the Board did not send certain records to the Circuit Court, with the result that litigation there was delayed. Id.

Lastly, Clowdis alleges that "Defendants, including but not limited to the Medical Board and the NPDB, have continued discriminatory acts against Dr. Clowdis to present," which included "acts in retaliation of this complaint, whereby the Medical Board reported false information against Plaintiff to the NPDB, which the NPDB published, in June 2015." Id. ¶ 60.

## II. Procedural Context for the Pending Motions

In 2015, Clowdis filed this action against a host of entities and individuals involved with his suspensions. Relevant to the pending motions, the SAC alleged, inter alia, the following claims for relief: Discrimination Based on Disability under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. (Count I); a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II); retaliation in violation of Title II of the ADA, 42 U.S.C. § 12203 (Count III); and a

6

violation of the Due Process Clause of the Constitution and 42 U.S.C. § 1983 (Count IV).³ SAC ¶¶ 62-147 (ECF No. 15). The various defendants filed a first set of MOTIONS TO DISMISS the SAC. See ECF Nos. 24, 29, 49, 55.

After considering the parties' positions on these MOTIONS TO DISMISS, the Court granted them in their entirety in a MEMORANDUM OPINION dated May 5, 2016. ECF No. 77. The Court held that Younger abstention precluded its exercise of jurisdiction because Clowdis had ongoing, related litigation in Virginia state court. Mem. Op. at 12-20 (ECF No. 77). The Court dismissed the claims against Defendant National Practitioner Data Bank on ripeness grounds. Id. at 27. Clowdis appealed.

In an unpublished, per curium opinion, the Fourth Circuit "affirm[ed] the district court's order dismissing Clowdis' claims for injunctive and declaratory relief" but "vacate[d] the dismissal of his claims for damages and remand[ed] with instruction to stay these claims until resolution of Clowdis' state appeal." Clowdis v. Silverman, 666 Fed. Appx. 267, 271 (4th Cir. 2016). The claims over which the Court was to retain jurisdiction were claims for "damages for the alleged violation of his constitutional rights, as well as damages for the alleged violations of the ADA

---

³ As discussed below, the other Counts in the SAC are no longer before the Court.

and the RA." Id. at 270.

Following this decision of the Court of Appeals, this Court ORDERED "that the plaintiff's claims for damages with respect to alleged violations of his constitutional rights and alleged violations of the American Disabilities Act and the Rehabilitation Act, Counts I through IV, are reinstated and are stayed pending resolution of the plaintiff's state court proceedings." ECF No. 85. The Court further ORDERED the parties to file periodic status reports on the state court proceedings, id., which were filed between February 2017 and April 2018. See ECF Nos. 86-89, 91-94, 97-100.

On August 1, 2018, following the conclusion of Clowdis' state court proceedings, the Court ORDERED that "the stay imposed by this Court's ORDER (ECF No. 85) entered January 23, 2017 is lifted." ECF No. 103. The Court noted that "COUNTS IV through XI are no longer before the Court having been previously dismissed, and that decision was affirmed by the United States Court of Appeals for the Fourth Circuit." Id. The Court further ORDERED that the Defendants could renew any motions to dismiss the SECOND AMENDED COMPLAINT FOR MANDAMUS AND DAMAGES (ECF No. 15) in an "orderly," count-by-count manner. Id. Because of the significant number (and confusing nature) of documents filed up to that point by Clowdis, the Court further ORDERED that Clowdis "shall file

8

nothing until the defendants file any motions that they may file pursuant to this ORDER and then the Plaintiff may respond in due course." Id.

Pursuant to that ORDER, the Commonwealth Defendants filed their THIRD AMENDED MOTION TO DISMISS (ECF No. 106) and supporting memoranda (ECF Nos. 107, 119). Clowdis responded in opposition. ECF No. 114. Likewise, the VCU Defendants filed their RENEWAL AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (ECF No. 108) and supporting memoranda (ECF Nos. 109, 120). Again, Clowdis opposed this motion. ECF No. 115.

In reviewing these motions and memoranda, the Court became aware that Count IV of the SAC (ECF No. 15) should still have been before the Court because it sought damages for an alleged violation of the Due Process Clause of the U.S. Constitution. See ORDER (ECF No. 128); SAC ¶ 97. Accordingly, the Court reinstated that Count; lifted the stay as to it; and provided the VCU Defendants an opportunity to amend their MOTION TO DISMISS (ECF No. 108) and file supplemental memoranda (as well as a response by Clowdis).[4] ECF No. 128. The VCU Defendants then filed their SECOND RENEWAL

---

[4] The Commonwealth Defendants' THIRD AMENDED MOTION TO DISMISS (ECF No. 106) already addressed Count IV, so they did not need to respond to this ORDER. ECF No. 128.

AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (ECF No. 129) and supporting memoranda (ECF Nos. 130, 134). Clowdis opposed it. ECF No. 131.

Now pending before the Court are the Commonwealth Defendants' and the VCU Defendants' MOTIONS TO DISMISS (ECF Nos. 106, 108, 129) the remaining Counts of the SECOND AMENDED COMPLAINT FOR MANDAMUS AND DAMAGES (ECF No. 15). The remaining Counts are Counts I through IV. See ECF No. 128. The Commonwealth Defendants bring their MOTION pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The VCU Defendants bring their MOTION pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), and 12(b)(6). These MOTIONS have been fully briefed and the matter is ripe for decision.

## LEGAL FRAMEWORK

### I. Clowdis' Pro Se Status

Clowdis is proceeding in this matter pro se. The Court typically construes documents filed by a pro se plaintiff liberally. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, Clowdis alleges that, while waiting for the Board to act on reinstating his medical license between 2007 and 2011, he completed law school. SAC ¶ 35 (ECF No. 15). He passed the New York State bar examination in 2011, "but his bar admission

10

was placed on hold [as] a result of his suspended medical license."
Id. ¶ 36.

"The Fourth Circuit has not explicitly decided whether attorneys proceeding pro se are entitled to this liberal construction." Downing v. Lee, No. 1:16-cv-1511, 2017 WL 3082664, at *7 (E.D. Va. July 18, 2017) (citing Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 72 (4th Cir. 2016)). This Court has declined to apply this liberal treatment to lawyers proceeding pro se. See Rashad v. Jenkins, No. 3:15cv655, 2016 WL 901279, at *2-3 (E.D. Va. Mar. 3, 2016) (surveying federal circuit court and Eastern District of Virginia opinions).[5] However, in recent decisions, the Fourth Circuit has expressly left open the question of whether a lawyer proceeding pro se "receives the benefit of this liberal construction." Kerr, 824 F.3d at 72; see also Willner v. Dimon, 849 F.3d 93, 103-104 (4th Cir. 2017). Because this remains an open question, "[o]ut of an abundance of caution. . .and in accordance with the liberal construction [afforded to] a pro se complaint," the Court will "construe [Clowdis'] arguments

---

[5] In the MEMORANDUM OPINION (ECF No. 77), the Court declined to extend pro se status to Clowdis because he is a law school graduate, had passed the bar examination, and would have been admitted to practice law but for the Board's suspension of his license. Id. at 9. The Fourth Circuit "decline[d] to address" whether this was the proper course because "the construction of the filings would not have altered the district court's rulings." Clowdis v. Silverman, 666 Fed. Appx. 267, 271 n.3 (4th Cir. 2016).

11

as best [it] can. . . ." Kerr, 824 F.3d at 72.

## II.  **Motions to Dismiss under Fed. R. Civ. P. 12**

The Commonwealth Defendants bring their MOTION pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), while the VCU Defendants bring their MOTIONS pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), and 12(b)(6).

The Court recently set forth the well-established principles governing Rule 12(b)(1):

> A party may file a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). If a court finds that it does not have subject matter jurisdiction over the case or controversy, it must dismiss the action. Of course, the plaintiff bears the burden of establishing that federal jurisdiction is proper.
>
> Challenges to subject matter jurisdiction may be made in two ways. First, a facial challenge to jurisdiction may be made by arguing that the complaint does not allege facts that permit the exercise of federal subject matter jurisdiction. If that type of challenge is raised, the court must assume that all facts alleged in the complaint are true. Second, the challenge can be made under the theory that the complaint's assertion of subject matter jurisdiction is not true. In that event, a court may consider evidence outside the pleadings.

Andrews v. Taylor, No. 3:17-cv-533, 2018 WL 2108022, at *2 (E.D. Va. May 7, 2018) (citation omitted).

Motions to dismiss under Fed. R. Civ. P. 12(b)(4) test the "sufficiency of the form of. . .process, rather than the manner or

12

method by which it is served." Stewart v. Va. Commonwealth Univ., No. 3:09CV738, 2011 WL 1827735, at *2 (E.D. Va. May 12, 2011) (citation omitted).

Lastly, motions to dismiss based upon Fed. R. Civ. P. 12(b)(6) are evaluated under the following standards:

> In [considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss], we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" A claim is "plausible on its face," if a plaintiff can demonstrate more than "a sheer possibility that a defendant has acted unlawfully."

Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." Rockville Cars, 891 F.3d at 145 (citation omitted). Notwithstanding those basic principles, however, the Court does not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Finally, as this Court recently has held:

> A statute of limitations defense may be
> decided upon on a motion to dismiss [pursuant
> to Fed. R. Civ. P. 12(b)(6)]. Typically, a
> court may only do so "if all facts necessary
> to the affirmative defense 'clearly appear[ ]
> on the face of the complaint.'" The Court does
> not read this principle as barring
> consideration of other materials that may be
> properly reviewed in resolving a motion to
> dismiss.

Penn v. 1st S. Ins. Servs., Inc., 324 F. Supp. 3d 703, 714 n.9
(E.D. Va. 2018) (citations omitted).

## DISCUSSION

While this case involves a dizzying array of assertions and
allegations by Clowdis against the Defendants, at this point, the
Court faces one straightforward question: do the damages claims
asserted in Counts I through IV of the SECOND AMENDED COMPLAINT
FOR MANDAMUS AND DAMAGES (ECF No. 15) survive the Defendants'
MOTIONS TO DISMISS? The Court concludes that the answer is "no."

While the arguments raised by each set of Defendants in
support of their MOTIONS TO DISMISS are similar, the Court will
proceed to analyze each Defendant's MOTION separately, and, as
explained below, the Court will GRANT each of the MOTIONS.

## I.   Commonwealth Defendants' Motion to Dismiss (ECF No. 106)

The Commonwealth Defendants argue that all Counts should be
dismissed because (1) the statutes of limitations have run; (2)
qualified and quasi-judicial immunity apply; and (3) Clowdis has

14

failed to state a claim. ECF No. 106 at 1-2; ECF No. 107 at 7. For Count IV specifically, the Commonwealth Defendants assert Eleventh Amendment immunity, res judicata, and collateral estoppel.[6] Id. Though somewhat difficult to discern, Clowdis' response argues that the Virginia proceedings have not afforded Colorado law "full faith and credit"; that the Commonwealth Defendants have violated the Double Jeopardy Clause of the U.S. Constitution; that Virginia's state proceedings were ultra vires; that the statutes of limitations have not expired on his claims; that sovereign immunity does not apply; that qualified and quasi-judicial immunity do not apply; that he has adequately stated claims to survive a motion to dismiss; and that res judicata and collateral estoppel do not apply. See generally ECF No. 114.

For the following reasons, the Court GRANTS the Commonwealth Defendants' MOTION TO DISMISS (ECF No. 106). The Court need not address each ground for dismissal raised by the Commonwealth Defendants.[7] The Court will deal with Counts I through III first,

---

[6] With the exception of the res judicata and collateral estoppel defense, which the Commonwealth Defendants argue is properly considered under Fed. R. Civ. P. 12(b)(6), see ECF No. 107 at 21, the Commonwealth Defendants do not specify under which Fed. R. Civ. P. the Court should consider their MOTION TO DISMISS.

[7] While it is necessary to resolve questions of subject matter jurisdiction first, see e.g., Owen-Williams v. Higgs, No.DKC 18-0439, 2019 WL 448810, at *2 (D. Md. Feb. 5, 2019) (quoting Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999)), the only defense raised by the Commonwealth Defendants with

15

followed by Count IV.

## A. Counts I through III

The Fourth Circuit has held that courts should "apply the same substantive analysis to both the ADA and the Rehabilitation Act '[b]ecause the language of the two statutes is substantially the same.'" A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347-48 (4th Cir. 2011) (quoting Doe v. Univ. of Maryland Med. Sys. Corp., 50 F.3d 1261, 1264 n.9 (4th Cir. 1995)); see also Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same.") (citation omitted). Accordingly, it is appropriate for the Court to consider Counts I through III together.

For following reasons, the Court grants the Commonwealth Defendants' MOTION TO DISMISS as to Counts I through III under

potential subject matter jurisdiction implications is the Eleventh Amendment defense (and that is only raised as to Count IV). The Court has subject matter jurisdiction over Clowdis' federal law claims in Counts I through IV under 28 U.S.C. § 1331 as his asserted claims arise under various federal statutes.

The Commonwealth Defendants' qualified and quasi-judicial immunity defenses to Counts I through III may properly be brought under Fed. R. Civ. P. 12(b)(6). See Occupy Columbia v. Haley, 738 F.3d 107, 115-16 (4th Cir. 2013) (reviewing motion to dismiss based on qualified immunity under Fed. R. Civ. P. 12(b)(6)); Raub v. Bowen, 960 F. Supp. 2d 602, 608 (E.D. Va. 2013) (same); Battle v. Whitehurst, 831 F. Supp. 522 (E.D. Va. 1993) (deciding question of judicial immunity under Rule 12(b)(6)).

16

Fed. R. Civ. P. 12(b)(6) because the statute of limitations on these Counts expired before Clowdis brought his lawsuit. See 1st S. Ins. Servs., Inc., 324 F. Supp. 3d at 706, 714 n.9 (deciding statute of limitations issue under Fed. R. Civ. P. 12(b)(6)).

### (1) Statute of Limitations Bars Clowdis' Claims

Claims brought under either Title II of the ADA or the Rehabilitation Act must be brought within one year of the claim accruing. A Soc'y Without A Name v. Virginia, 655 F.3d at 347-48. Such a claim "accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Id. at 348 (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). If there is a continuing legal violation by a defendant, that can start the statute of limitations anew for each additional violation. See id.

But, "to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." Id. (quoting Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)) (alteration in original). That is, "if the plaintiff can show that the illegal act did not occur just once, but rather in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." Id. (internal quotations omitted) (alteration in original). The "continuing ill effects of an original violation.

17

. . .do not constitute a continuing violation." Id.

To determine whether the statute of limitation bars Clowdis' action on these Counts, it is necessary first to determine when Clowdis brought his ADA and Rehabilitation Act claims. The SAC (ECF No. 15) was filed on October 27, 2015. Prior to that date, Clowdis had also filed several other documents: his COMPLAINT FOR MANDAMUS AND DAMAGES (ECF No. 4), which indicates that it was "received" by the Clerk of Court on March 3, 2015,[8] and his AMENDED COMPLAINT (ECF No. 52), which, by order of the Court, was determined to be filed on March 28, 2015. See ECF No. 51. Given Clowdis' pro se status, and the similarities in these various complaints, the Court will treat March 3, 2015 as the starting date for statute of limitations purposes because that is the date on which Clowdis filed his first COMPLAINT.[9] Accordingly, any cause of action must have accrued no later than March 3, 2014.

Construing Clowdis' SAC liberally, the Court concludes that Counts I through III are barred by the one-year statute of limitations. According to the SAC, the last concrete action of the Commonwealth Defendants of which Clowdis complains is the

---

[8] The Court's ECF system, however, indicates that this document was filed on April 5, 2015.

[9] The Defendants also treat March 3, 2015 as the filing date for statute of limitations purposes. See, e.g., ECF No. 107 at 7; ECF No. 109 at 8.

second Board hearing, at which Clowdis alleges the Board "turned the de facto suspension [of his medical license] into an explicit one." SAC ¶ 55 (ECF No. 15). As Clowdis expressly alleges, "[e]vidence for the February 2013 hearing was withheld from submission and/or admission into evidence by Foster, Stewart, HPMP, the Medical Board, Deschenes, and Harp, preventing Dr. Clowdis from countering the Defendants' acts in violation of the ADA, Title II." Id. The Board hearing occurred on February 22, 2013. Id.; ECF No. 107 at 3. Clowdis' vague allegations all flow from the suspension of his medical license, which occurred in 2007, SAC ¶ 3, and was last dealt with at the February 2013 hearing. Id. ¶ 55.

It is thus clear on the face of the SAC that, after the February 22, 2013 hearing, Clowdis knew, or had reason to know about, the claims that he asserts against the Commonwealth Defendants in Counts I through III. See A Soc'y Without a Name, 655 F.3d at 348. Rather than taking action, Clowdis waited more than two years to act.[10]

Perhaps recognizing that the statute of limitations dooms his claims, Clowdis makes several vague allegations of continuing violations by various defendants. See SAC ¶ 60 ("Defendants,

---

[10] Indeed, a search of the SAC does not yield a single reference to any action that occurred in 2014, the year before Clowdis filed the case.

19

including but not limited to the Medical Board and the NPDB, have continued discriminatory acts against Dr. Clowdis to present. This includes acts in retaliation of this complaint, whereby the Medical Board reported false information against Plaintiff to the NPDB, which the NPDB published, in June 2015."); id. ¶ 70 ("The Medical Board continues to publish discriminatory communications to the present, daily, by its own means and through the NPDB, in violation of the ADA."). And, in his response brief, he suggests that equitable tolling applies because he was pursuing a "different remedy against defendants" and because the defendants used "fraud to dissuade [him] from going to court," citing two Seventh Circuit cases. ECF No. 114 at 24. The Court will address each of these arguments in turn.

First, as explained more fully above, to establish a continuing violation, there must be more than "continuing ill effects of an original violation" and the plaintiff must establish a "fixed and continuing" illegal practice. A Soc'y Without A Name, 655 F.3d at 348. To the best of the Court's ability to discern, the "continuing violation" that Clowdis complains of is a report of "false information against Plaintiff" to the NPDB in June 2015, which would be within the statute of limitations if it represents a new violation. SAC ¶ 60. Other than citing cases stating general propositions of law, Clowdis provides no authority

20

to support his position that the report to the NPDB would
constitute a "continuing violation" of the ADA or Rehabilitation
Act. Rather, based on a review of the SAC, it appears that Clowdis
is complaining of the "continuing ill effects of an original
violation," not an illegal pattern. A Soc'y Without A Name v.
Virginia, 655 F.3d at 348. Therefore, the "continuing violation"
doctrine does not apply. And, because everything about which
Clowdis complains stems from the original suspension of his license
in 2007 and alleged improprieties during hearings in 2011 and 2013,
Counts I through III are barred by the statute of limitations.

Second, the Court also rejects Clowdis' equitable tolling
argument, raised for the first time in his response brief. ECF No.
114 at 24. The Supreme Court of the United States has instructed
that the equitable tolling doctrine is to be employed "sparingly."
See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990);
see also CVLR Performance Horses, Inc. v. Wynne, 792 F.3d 469, 476
(4th Cir. 2015) ("Equitable tolling has long been considered an
extraordinary remedy in this circuit, and litigants face a
considerable burden to demonstrate that it applies."). As the
Fourth Circuit has held:

> The doctrine has been applied in "two
> generally distinct kinds of situations. In the
> first, the plaintiffs were prevented from
> asserting their claims by some kind of
> wrongful conduct on the part of the defendant.
> In the second, extraordinary circumstances

21

> beyond plaintiffs' control made it impossible
> to file the claims on time."

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (citations omitted).

Clowdis' response brief (ECF No. 114) makes vague assertions that equitable tolling applies "while a plaintiff pursues a different remedy against defendants" and that the Defendants engaged in "fraud" to prevent him from going to court. ECF No. 114 at 24. Clowdis does not clarify what he means by his first point, nor does this assertion fit within the Fourth Circuit's test in Harris. As to the second point, the "fraud" that Clowdis alleges (he cites to SAC ¶¶ 46-47, 55), reflects his misunderstanding as to what the HPMP required. That Clowdis misunderstood the terms of his suspension does not establish a fraud on the part of the Commonwealth Defendants that would give rise to equitable tolling. In short, Clowdis' assertion of equitable tolling does not satisfy his heavy burden for the Court to find that this "extraordinary remedy" applies to him. Wynne, 792 F.3d at 476.

For the foregoing reasons, the Court finds that the statute of limitations stands as a bar to the claims asserted by Clowdis in Counts I through III against the Commonwealth Defendants. Accordingly, these Counts are dismissed as to these Defendants.

## B. Count IV

As discussed above, the Commonwealth Defendants seek dismissal of Count IV on the same grounds as they seek dismissal of Counts I through III, as well as by an assertion of Eleventh Amendment immunity and res judicata and collateral estoppel. See ECF No. 106 at 1-2; ECF No. 107 at 7.[11] Clowdis brings Count IV pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 for alleged procedural improprieties in his state medical licensure proceedings. See SAC ¶¶ 88-97.

For the following reasons, the Court concludes that the

---

[11] While not expressly stated in their briefing, it may be that the Commonwealth Defendants did not raise the Eleventh Amendment defense as to Counts I and III because Congress has abrogated states' Eleventh Amendment immunity under the ADA or the Commonwealth has waived it as to Rehabilitation Act claims. See 42 U.S.C. § 12202; United States v. Georgia, 546 U.S. 151 (2006) (holding that Title II of ADA validly abrogates Eleventh Amendment immunity to extent it creates a private cause of action for conduct that actually violates the Fourteenth Amendment); Tennessee v. Lane, 541 U.S. 509 (2004) (valid abrogation in cases implicating fundamental right of access to the courts). Similarly, the Fourth Circuit has held that state entities can waive Eleventh Amendment immunity from suit under Section 504 of the Rehabilitation Act when they accept "federal funds under a statute that clearly and unambiguously condition[s] receipt of such funds on a waiver of immunity." Constantine v. Rectors and Visitors of Geo. Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005).

The Fourth Circuit has held that "sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." Hutto v. S.C. Retirement Sys., 773 F.3d 536, 543 (4th Cir. 2014). Accordingly, if the Commonwealth Defendants have not raised it as a defense to Counts I through III, the Court need not consider it.

23

Eleventh Amendment bars this claim against the Commonwealth Defendants.

## (1) Eleventh Amendment Immunity Applies to Damages Claims against the Commonwealth Defendants

The Commonwealth Defendants argue that, in Section 1983 cases for damages (as here), the Eleventh Amendment bars this Court from exercising jurisdiction against the Commonwealth and its entities. ECF No. 107 at 16-19. And, they argue that Clowdis' claims against individual Commonwealth Defendants, although purportedly sued in their "individual" capacities, are really damages claims against the Commonwealth, so they too must be dismissed on Eleventh Amendment grounds. Id. at 17-19. The Court agrees.

The Eleventh Amendment "prohibits any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 746 (4th Cir. 2018) (quoting U.S. Const. amend. XI). The Amendment also generally prevents citizens from bringing suits against their own state in federal court. Id.; Litman v. George Mason Univ., 186 F.3d 544, 549 (4th Cir. 1999). State agencies and entities are also protected by a State's Eleventh Amendment immunity. Regents of the Univ. of Cal. V. Doe, 519 U.S. 425, 429-30 (1997); Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542 (4th Cir. 2014) (citations omitted); see also 17A Moore's Federal Practice, §123.23[4][a] (3d

24

ed. 2017) ("The state's Eleventh Amendment immunity also extends

to any state agency that is an arm of the state government, such

as a state health department, because the agency is considered

part of the state.").

To determine whether a State agency or entity is entitled to

the State's Eleventh Amendment immunity, courts are to analyze

"four nonexclusive factors":

> (1) whether any judgment against the entity as
> defendant will be paid by the State . . . (2)
> the degree of autonomy exercised by the
> entity, including such circumstances as who
> appoints the entity's directors or officers,
> who funds the entity, and whether the State
> retains a veto over the entity's actions; (3)
> whether the entity is involved with state
> concerns as distinct from non-state concerns,
> including local concerns; and (4) how the
> entity is treated under state law, such as
> whether the entity's relationship with the
> State [is] sufficiently close to make the
> entity an arm of the State.

Lawson v. Union Cnty. Clerk of Court, 828 F.3d 239, 250 (4th Cir.

2016); DeBauche v. Virginia Commonwealth Univ., 7 F. Supp. 2d 718,

721-22 (E.D. Va. 1998) (applying these factors to determine that

VCU is an arm of the state).

In damages actions pursuant to Section 1983, the Supreme Court

has held "that, absent waiver by the State or valid congressional

override, the Eleventh Amendment bars a damages action against a

State in federal court." See Kentucky v. Graham, 473 U.S. 159, 169

(1985) (citing several cases).¹² Furthermore, a State's Eleventh Amendment protection from damages claims "remains in effect when State officials are sued for damages in their official capacity." Id.; Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Section 1983 is not a valid congressional abrogation of Eleventh Amendment immunity, see Quern v. Jordan, 440 U.S. 332 (1979), and the Commonwealth Defendants assert that they have "not waived sovereign immunity." ECF No. 107 at 16; see also Madden v. Virginia, No. 3:11CV241, 2011 WL 2559913 (E.D. Va. June 28, 2011) (holding in similar Section 1983 case that the Eleventh Amendment barred damages claims against Virginia, the Department of Health Professions, and the Virginia Board of Medicine).

However, state officials may be sued under Section 1983 in their individual capacities. See Hafer v. Melo, 502 U.S. 21 (1991). The fact that a plaintiff characterizes a suit as an individual capacity suit does not end the matter. See Martin v. Wood, 772 F.3d 192, 195-96 (4th Cir. 2014). The Court must "look beyond the form of the complaint and the conclusory allegations against [state officials] to determine" if the State is the real party in

---

¹² There are three recognized exceptions to Eleventh Amendment immunity: congressional abrogation, prospective injunctive relief against state officers, and State waiver. See Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 248-49 (4th Cir. 2012) (citations omitted). None are implicated by Count IV.

26

interest. Id. at 195. The Fourth Circuit requires the Court to assess several factors to determine if the State is the real party in interest:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions ultra vires.

Id. at 196 (citations omitted).

Applying the controlling framework, the Court concludes that the entity Commonwealth Defendants—the Commonwealth of Virginia; the Department of Health Professions ("DHP"); the Virginia Board of Medicine ("Board"), which is a part of DHP; Virginia Commonwealth University ("VCU"); and the Virginia Health Practitioners' Monitoring Program ("HPMP")—are all protected by Virginia's Eleventh Amendment immunity. See Madden, 2011 WL 2559913 at *2-3 (holding that the Commonwealth, DHP, and Board are all protected by Eleventh Amendment in similar Section 1983 case). The reasoning in Madden applies in full force to the Commonwealth, DHP, and the Board here.

Further, the Court agrees with Judge Spencer that, applying

the factors from Lawson, 828 F.3d at 250, "VCU is an arm of the state and consequently, the Eleventh Amendment applies here." DeBauche, 7 F. Supp. 2d at 721-22. Application of the Lawson factors also shows that HPMP is an arm of the state. Most importantly, HPMP is maintained by DHP and the Director of DHP promulgates regulations for the operation of HPMP. See Va. Code § 54.1-2516. HPMP is also involved in the state-wide concern of monitoring physicians with impairments. Consequently, the Court holds that the Eleventh Amendment bars Clowdis' assertion of Count IV against the Commonwealth, DHP, the Board, VCU, and HPMP.

This brings the analysis to the individual Commonwealth Defendants—William Harp, M.D., Executive Director of the Board; Jennifer Deschenes, Deputy Executive Director of the Board; Sherry Foster, of DHP; investigator Loretta Hopson-Bush of the Board; and Amy Stewart, of HPMP. Clowdis brings suit against them all "individually (personally) and in [their] official capacit[ies]." See SAC ¶¶ 9-12, 15. To the extent that these Defendants are sued in their official capacities, those damages claims are barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. at 169. Additionally, applying the factors set forth in Martin v. Wood, 772 F.3d 192, the Court concludes that the "individual" capacity suits are really suits against the Commonwealth, and must fail on Eleventh Amendment grounds.

28

First, it is clear that the violations of which Clowdis complains as allegedly committed by these Defendants were "tied inextricably to their official duties." Wood, 772 F.3d at 196. The essence of Clowdis' complaint against these Defendants is how they performed their official duties in investigating and suspending his medical license. See SAC ¶¶ 31, 37-38, 52, 89, 95. Second, the Commonwealth, not the individual Defendants, would have borne the burden of reinstating Clowdis' license. Third, a judgment against these officials would be institutional and paid for by the Commonwealth itself. ECF No. 107 at 18. Fourth, there is no evidence that the actions by the individual Defendants were "to further personal interests," but rather were done as part of their role of investigating the suspension of Clowdis' medical license. Wood, 772 F.3d at 196. Lastly, Clowdis has not established that the actions of the individual Defendants were ultra vires; rather, they were done as part of these officials' duties. See SAC ¶¶ 31, 37-38, 52, 89, 95.   For these reasons, Clowdis' attempts to recharacterize his suit against the individual Commonwealth Defendants fails, and the Eleventh Amendment protects them too.

## C. Conclusion as to Commonwealth Defendants (Entity and Individual)

For the reasons set forth above, the Commonwealth Defendants' THIRD AMENDED MOTION TO DISMISS (ECF No. 106) is granted, and Counts I through IV of the SAC are dismissed with prejudice.

29

## II. VCU Defendants' Motion to Dismiss (ECF Nos. 108, 129)

The Court next turns to the two pending MOTIONS TO DISMISS by the VCU Defendants (ECF Nos. 108, 129). The VCU Defendants argue that, for all Counts: (1) the statutes of limitations have run; (2) that the VCU Defendants are immune from the claims under various theories; (3) that Clowdis failed to follow Va. Code § 8.01-20.1; (4) that Clowdis failed to serve the VCU Defendants with sufficient process; (5) that Clowdis failed to timely exhaust his administrative remedies; and (6) that Clowdis has failed to state a claim for relief. ECF No. 109 at 2-3; ECF No. 130 at 2-3. Clowdis opposes the MOTIONS for essentially the same reasons as he opposed the Commonwealth Defendants' MOTION. See generally ECF Nos. 115, 131.

As an initial matter, the Court notes that the VCU Defendants brought a Fed. R. Civ. P. 12(b)(1) MOTION TO DISMISS asserting a lack of subject matter jurisdiction because: the statutes of limitations had expired and that various immunities, including Eleventh Amendment, qualified immunity, and judicial immunity prevented the Court from exercising subject matter jurisdiction. ECF No. 109 at 8-11; ECF No. 130 at 3-8. While the Court must always assure itself of its subject matter jurisdiction, a MOTION TO DISMISS on statute of limitations grounds is properly considered under Fed. R. Civ. P. 12(b)(6). See Penn v. 1st S. Ins. Servs.,

Inc., 324 F. Supp. 3d 703, 714 n.9 (E.D. Va. 2018). Thus, the Court considers the statute of limitations defense not as a limitation on its subject matter jurisdiction, but as a failure to state a claim under 12(b)(6). And, as discussed supra note 7, the Court may consider the non-Eleventh Amendment immunities under Fed. R. Civ. P. 12(b)(6) as well.

Insofar as the VCU Defendants assert Eleventh Amendment immunity, the Court again notes that "sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." Hutto v. S.C. Retirement Sys., 773 F.3d 536, 543 (4th Cir. 2014). The Supreme Court has not yet decided "whether Eleventh Amendment immunity goes to a court's subject matter jurisdiction." Id. at 542-43 (internal quotations omitted). While the "trend" is to consider Eleventh Amendment arguments under Rule 12(b)(1) (verses 12(b)(6)), the Fourth Circuit has yet to decide this question. Taylor, 2018 WL 2108022, at *4 (citation omitted); Quigley v. McCabe, No. 2:17cv70, 2017 WL 3821806, at *2 (E.D. Va. Aug. 30, 2017).

Given the Fourth Circuit's holding in Hutto that the "defendant bears the burden of demonstrating" the applicability of Eleventh Amendment immunity, 773 F.3d at 543, the Court concludes that, as to Counts I through III (ADA and Rehabilitation Act claims), the VCU Defendants have failed to satisfy their burden

31

that the Eleventh Amendment applies to them and these Counts. Nowhere in their briefing do the VCU Defendants discuss the ADA's express abrogation of Eleventh Amendment immunity, see 42 U.S.C. § 12202, the Supreme Court's decisions regarding Title II of the ADA's abrogation of the Eleventh Amendment, see United States v. Georgia, 546 U.S. 151 (2006); Tennessee v. Lane, 541 U.S. 509 (2004), or the Fourth Circuit's decision in Constantine, 411 F.3d 474 (4th Cir. 2005) (waiver of sovereign immunity under the Rehabilitation Act). Because the VCU Defendants have not cited or analyzed the impact of these authorities with regard to Counts I through III, the Court finds that they have not established that the Eleventh Amendment bars the Court's jurisdiction as to these Counts.

The Court also finds that the VCU Defendants have failed to satisfy their burden to establish that the Eleventh Amendment bars Count IV against them. See ECF NO. 130 at 4-5. The VCU Defendants assert that the VCU Health System Authority is a state entity, but do not make an argument about the role of MCVAP as a state entity. See id. Then, the VCU Defendants assert that "Dr. Silverman is also immune from claims in his official capacity" and that "his employers, VCUHSA and MCVAP" are thus immune. Id. In a footnote, the VCU Defendants attempt to "incorporate" an entire argument made by the Commonwealth Defendants about the Eleventh Amendment

32

protection of HPMP. Id. at 5 n.1. The Court does not find that such conclusory assertions and incorporation by reference satisfies the VCU Defendants' burden to demonstrate that the Eleventh Amendment applies to them as to Count IV.

In sum, the VCU Defendants have failed to meet their burden to establish an Eleventh Amendment defense. However, the VCU Defendants' MOTION TO DISMISS may be properly considered under Fed. R. Civ. P. 12(b)(6), and the Court now will turn to that task.

**A. Counts I through III**

As it did with the Commonwealth Defendants' MOTION, the Court considers Counts I through III together. See, e.g., A Soc'y Without A Name v. Virginia, 655 F.3d at 347-48. And, for very similar reasons, the motion (ECF No. 108) made by the VCU Defendants will be granted.

**(1) Statute of Limitations Bars Clowdis' Claims**

The one-year statute of limitations on Counts I through III clearly bars these Counts as to the VCU Defendants. As explained above, any claims under Counts I through III must have accrued by March 3, 2014. The SAC demonstrates that the last allegation by Clowdis that can even remotely be construed to apply against the VCU Defendants is Silverman's "independent medical evaluation" done in preparation for the 2011 license hearing and "testimony" of Silverman at the hearing on May 11, 2011. SAC ¶¶ 49, 3.

33

Accordingly, at the latest, any of Clowdis' claims under Counts I through III must have been brought by or around May 11, 2012. Instead, they were brought on March 3, 2015. Thus, they are time barred.

The arguments made by Clowdis for continuous violation and equitable tolling as to the VCU Defendants are even weaker than they are against the Commonwealth Defendants. Paragraph 60 of the SAC states, "Defendants, including but not limited to the Medical Board and the NPDB, have continued discriminatory acts against Dr. Clowdis to present. This includes acts in retaliation of this complaint, whereby the Medical Board reported false information against Plaintiff to the NPDB, which the NPDB published, in June 2015." SAC ¶ 60. While the VCU Defendants are "Defendants" in this case, Clowdis' broad allegation of continuing violations does not even mention anything tied to the VCU Defendants. In his response brief, Clowdis argues that "ex parte communications between VCU Defendants and Commonwealth Defendants" and the fact that "Silverman was provided a copy of this complaint by Court Order, entered April 6, 2015," establishes a continuing violation as to the VCU Defendants. ECF No. 115 at 10, 17. Those conclusory allegations do not establish a continuing violation of either the ADA or the Rehabilitation Act by the VCU Defendants. Similarly, Clowdis has not made any showing that "some kind of wrongful

34

conduct on the part of the [VCU Defendants]" or "extraordinary circumstances beyond [Clowdis'] control made it impossible to file the claims on time" in order to invoke equitable tolling. Harris, 209 F.3d at 330.

Accordingly, the Court will grant the VCU Defendants' MOTION TO DISMISS (ECF No. 108) as to Counts I through III.

## B. Count IV

As with Counts I through III, the Court also concludes that Clowdis' claim in Count IV against the VCU Defendants fails under the applicable statute of limitations. The MOTION TO DISMISS as to this Count (ECF No. 129) is granted.

### (1) Statute of Limitations Bars Clowdis' Claims

Count IV alleges a due process violation pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. There is no statute of limitations in 42 U.S.C. § 1983, so courts borrow an analogous state statute of limitations. See Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991). The Supreme Court of the United States has held that courts should apply a state's statute of limitations for personal injury actions to Section 1983 actions. See Owens v. Okure, 488 U.S. 235, 239-242 (1989); Wilson v. Garcia, 471 U.S. 261 (1985) In Virginia, federal courts apply the state's two-year statute of limitations for personal injury claims to Section 1983 claims. See A Society Without A Name, 655 F.3d at

35

348; Lewis, 947 F.2d at 735; Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery. . .shall be brought within two years after the cause of action accrues."). And, a "civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." A Society Without A Name, 655 F.3d at 348 (internal quotation omitted). Accordingly, Clowdis must have brought his Section 1983 claim for the alleged due process violation within two years of "know[ing] or [having] reason to know of the injury." Id.

Reviewing Count IV of the SAC for allegations against the VCU Defendants reveals that Clowdis makes vague allegations that various Defendants "arbitrarily and irrationally classified and discriminated against [him] based on perceived disabilities and other characteristics" in violation of due process, SAC ¶ 89; that "additional terms and conditions were assessed against Dr. Clowdis despite a conflict of interest on the part of Dr. Silverman and his HPMP," id. ¶ 93; and that various Defendants "continued" to violate his due process rights. Id. ¶¶ 94-97. The last date certain in the allegations is the second Board hearing, held on February 22, 2013. Id. at 95-96. Clowdis thus had until February 2015 to bring his claim. He did not bring this suit until March 3, 2015, meaning that it is time-barred. See A Society Without A Name, 655

F.3d at 348; Lewis, 947 F.2d at 735; Va. Code § 8.01-243(A).

However, that conclusion is a perhaps too-generous reading of the SAC's allegations against the VCU Defendants. In reality, what Clowdis complains about as to the VCU Defendants is Dr. Silverman's conflict of interest as the CEO of the HPMP. ¶¶ 49, 50, 51, 55. This, Clowdis alleges, tainted the May 2011 Board hearing, see, e.g. id. ¶ 50-51, a taint that Clowdis asked the Board of Medicine to reconsider at the February 2013 hearing. Id. ¶ 55. Clowdis' Section 1983 claims against the VCU Defendants, then, accrued in May 2011, and must have been brought by May 2013. Under either reading of the SAC, Count IV is time-barred.

Finally, neither equitable tolling nor the "continuing violation" doctrine saves Count IV as to the VCU Defendants. Other than conclusory allegations of continuing violations, Clowdis has alleged nothing to establish that either of these doctrines apply.

## C. Conclusion as to VCU Defendants

For the reasons set forth above, all four Counts against the VCU defendants will be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the THIRD AMENDED MOTION TO DISMISS (ECF No. 106); RENEWAL AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM

37

AUTHORITY (ECF No. 108); and SECOND RENEWAL AND SUPPLEMENTATION OF MOTIONS TO DISMISS BY DEFENDANTS JOEL JEREMY SILVERMAN, M.D.; MCV ASSOCIATED PHYSICIANS; AND VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEM AUTHORITY (ECF No. 129) are GRANTED in their entirety.

The Court dispenses with oral argument because the facts and legal conclusions are adequately presented in the materials and oral argument would not aid in the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to the Plaintiff.

It is so ORDERED.

_____ /s/ _REY_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March _28_, 2019